IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

    v.                                                                 Case No. 18-CR-585 JAP

JAMES GONZALES,

    Defendant

## MEMORANDUM OPINION

On August 20, 2019, the Court of Appeals issued a mandate (Doc. 59) making its July 29, 2019 Judgment (Doc. 59-1) effective August 20, 2019. In its opinion, *United States v. Gonzales*, 931 F.3d 1219 (10th Cir. 2019), the Court of Appeals directed the District Court, on remand, to "address the factual question of Mr. Gonzales's intent." *Gonzales*, 931 F.3d at 1224. On that issue the Government had contended that "Mr. Gonzales intended to instill fear of bodily harm when he pulled the gun from his holster." *Id.* Counsel for Mr. Gonzales responded that he merely "was trying to discard the gun." *Id.* The ultimate question is whether six offense levels should be added under United States Sentencing Guideline § 3A1.2(c)(1) in determining the appropriate sentencing range for Mr. Gonzales.[1]

---

[1] Guideline § 3A1.2(c)(1) reads:

    If, in a manner creating a substantial risk of serious bodily injury, the defendant or a person for whose conduct the defendant is otherwise accountable –
(1) knowing or have reasonable cause to believe that a person was a law enforcement officer, assaulted such officer during the course of the offense or immediate flight therefrom …

    increase by **6** levels.

1

Since the hearing on November 1, 2018 at which sentence was imposed, the factual record has not been supplemented. Hence, I must attempt to divine Mr. Gonzales' specific intent based on the evidence presented at the hearing on October 3, 2018. *See* Transcript, October 3, 2018 Hearing (Doc. 41). Only one witness, Albuquerque Police Department Detective Eric Endzel testified at the hearing. I found Detective Endzel's testimony to be credible. Memorandum Opinion (Doc. 45) at 1. Detective Endzel did not express a direct opinion about Mr. Gonzales' specific intent. However, in answer to the question "was he trying to discard it or was he trying to use it?", Detective Endzel stated: "I believe he was trying to use it." Transcript October 3, 2018 Hearing (Doc 41) at 22, lines 13-15.

Other parts of Detective Endzel's testimony alluded to Mr. Gonzales' intent to harm persons, especially Detective Endzel and other officers. I posed the question "were you in fear of your safety or life at the time you saw Mr. Gonzales attempting to pull the gun out of his waistband?" *Id* at 21, lines 23-25. Detective Endzel replied: "Yes sir. I had actually made the decision to fire upon him to protect myself. I didn't have a chance. He fumbled it before I could acquire a sight picture." *Id.* at 22, lines 1-3. In reply to a question by defense counsel, Detective Endzel rejoined: "I clearly observed him clear his shirt from his waistband, draw a firearm from his waistband. Those actions made me believe that he was pulling a firearm to aid his escape from officers." *Id.* at 20, lines 10-13. In response to defense counsel's declaration, "You don't know what Mr. Gonzales intended when he pulled that out, because you're not Mr. Gonzales, correct?", Detective Endzel simply disclaimed: "I am not Mr. Gonzales." *Id* at lines 18-21. When asked if Mr. Gonzales' actions caused him to be intimidated, Detective Endzel asserted: "When I saw him begin to pull the weapon, it placed me in imminent fear for my life, the lives of the officers around

me, and the civilians in the area. I believed he was pulling the firearm to attempt to use it to facilitate his escape from law enforcement." *Id* at 13, lines 5-9.

Also bearing tangentially on Mr. Gonzales' intent were Detective Endzel's observations regarding what happened in the micro-second interval between Mr. Gonzales initially losing control of the gun on the upswing from his waistband and the gun striking the ground. Here, Detective Endzel reported: "[W]hen he lost control of it, he did not throw it. It continued in an upward trajectory which means he lost control during his draw stroke, and there was no attempt made to throw it away from his person. I observed him reach toward it in an attempt catch it and to retain it." *Id* at 13, lines 13-17. Describing this occurrence a little differently, Detective Endzel said: "As he was running around the gas pumps, he wasn't wearing a jacket, just a long T-shirt. Both hands went down, pulled the shirt up to clear his waistband. I clearly saw a firearm in what appeared to be a holster on the side of his waist. He acquired a firing grip with his right hand, started pulling it out. The firearm started tumbling this way, and with both hands, I saw him attempt to retain it. When he missed it, the firearm fell . . .." *Id.* at 12, lines 13-20.

Defense counsel's offer of evidence supporting Mr. Gonzales' position about his intent, consisted of exhibits, which the Court finds were of little relevance and not probative of Mr. Gonzales' intent, and cross examination of Detective Endzel. Defense counsel declaimed "You don't know if he was pulling it to facilitate his escape, do you?" *Id*. at 19, lines 2-4. This prompted the Assistant United States Attorney to object: "He's asking him to speculate about what the defendant was thinking. He can't do that, but he can talk about his observations." *Id.* at lines 5-7. To this defense counsel retorted: "And that's exactly my point. So as long as that point is made clear, I'll move on." *Id*. at lines 8-9. However, defense counsel then repeated essentially the same question: "You don't know if Mr. Gonzales was throwing away a firearm so he wouldn't be

3

arrested for being in possession of a firearm, do you?" *Id.* at lines 14-16. Detective Endzel calmly answered: "I did not observe him throw a firearm." *Id.* at line 17. Defense counsel also established that if any of the five officers at the scene had been in fear for their lives, they would have been justified in using deadly force, but none did that. *Id* at 21, lines 16-21. In addition, I inquired whether Mr. Gonzales ever pointed his gun at Detective Endzel and Detective Endzel answered, "No sir." *Id.* at 12, lines 21-22.

At the conclusion of the testimony and argument by counsel, I found that "the officer was in fear of his life believing that the defendant was trying to grip the handgun in order to do the officer harm." *Id.* at 25, lines 18-20. Although I made this factual finding about Detective Endzel's belief regarding Mr. Gonzales' intent, I did not explicitly find what Mr. Gonzales had specifically intended.

The Court of Appeals pointed out that "the § 3A1.2(c)(1) enhancement would apply only if Mr. Gonzales had the specific intent to put a law enforcement officer in fear of serious bodily injury." *Gonzales*, 931 F.3d at 1224. It summarized the parties' positions thusly: "On that issue, the parties presented different views of the evidence. The government argues that Mr. Gonzales intended to instill fear of bodily harm when he pulled the gun from his holster. Mr. Gonzales responds that the evidence permitted a reasonable inference that he was trying to discard the gun. *Id.* The Court of Appeals then declared: "Both findings would be reasonable under the evidence," and directed this Court on remand to address the factual question of Mr. Gonzales' intent. *Id.* (further citation omitted).

So, what was Mr. Gonzales' specific intent? He chose not to tell us in court, as was his right. He uttered nothing during his encounter with the police. He did not threaten, "Back off, I've got a gun." Neither did he yell, "Don't shoot, I am throwing my gun away."

4

In the effort to ascertain Mr. Gonzales' specific intent, I have carefully reconsidered the evidence. Intuition strongly suggests and I find that Mr. Gonzales did intend, specifically, to harm Detective Endzel, but was thwarted in his effort to do so by fumbling his gun and trying, unsuccessfully, to regain control of it. Consequently, I conclude that the United States Probation Office correctly determined that six offense levels should be added under U.S.S.G. § 3A1.2(c)(1). The total offense level becomes 17 and the guideline imprisonment range 27 to 33 months based on the Court's prior ruling that the criminal history category is II.

_____
SENIOR UNITED STATES DISTRICT JUDGE